COMMONWEALTH *vs.* MICHAEL J. KYNE.

Worcester.     October 1, 1894. — October 17, 1894.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Intoxicating Liquors — Keeping with Intent unlawfully to sell — Evidence — Meaning of "Intoxicating Liquors" — Discretion of Justice.*

At the trial of a complaint for keeping intoxicating liquors with intent unlawfully to sell the same, evidence that a deputy marshal of the United States went to the defendant's house not very long after the time of the alleged illegal keeping, and in reply to a question told him he was wanted for a violation of the United States revenue laws in selling intoxicating liquors without having paid a United States revenue tax, and that the defendant replied that he meant to have paid it and would do so now, and inquired how much the fine would be, and offered to pay it, is competent in connection with other evidence tending to show the defendant's guilt, and the term "intoxicating liquors" must be presumed to have been used by the marshal in its ordinary sense, and to have referred to liquors the sale of which without a license is unlawful.

At the trial of a complaint for keeping intoxicating liquors with intent unlawfully to sell the same, it is within the discretion of the presiding justice to decide that evidence of remarks of the defendant in the nature of an admission was not too remote.

COMPLAINT, dated December 1, 1893, charging the defendant with keeping intoxicating liquors with intent unlawfully to sell

the same. At the trial in the Superior Court, before *Maynard*, J., the jury returned a verdict of guilty; and the defendant alleged exceptions. The facts appear in the opinion.

*E. J. McMahon*, for the defendant.

*F. A. Gaskill*, District Attorney, for the Commonwealth.

KNOWLTON, J. The only exception argued relates to the admission of evidence of what the defendant said about six weeks after the time at which he was charged with keeping intoxicating liquors with intent unlawfully to sell them. A deputy marshal of the United States went to his house, and in reply to a question told him he was wanted for a violation of the United States revenue laws, in selling intoxicating liquors without having paid a United States revenue tax. He replied, " I meant to have paid it, and will do it now." He inquired how much the fine would probably be, and counted out the money and offered to pay it. This was in the nature of an admission that he had been selling intoxicating liquors at some time before. In connection with the other evidence against him it was competent.* Although the time to which the admission related was not definitely fixed, the statement was made not very long after the time of the alleged illegal keeping, and it was within the discretion of the presiding justice to decide that it was not too remote. *Commonwealth* v. *Finnerty*, 148 Mass. 162. *Commonwealth* v. *Hurley*, 158 Mass. 159. *Commonwealth* v. *Neylon*, 159 Mass. 541.

---

* There was evidence that the defendant, with his wife and family, occupied a flat in a tenement house in Leicester; that, while the officers were searching the premises for liquor on the evening of November 29, 1893, one of them noticed the wife of the defendant in his presence going down the stairs from the tenement carrying something under her apron, which, after resistance on her part, he took from her, and which proved to be a gallon jug full of whiskey; that in a building near the house occupied by the defendant was a saloon in which was a bar or counter; that on July 23, 1893, the officer saw five men go into the saloon, and one man remain outside talking with the defendant; that on September 19, 1893, the officer saw a crowd of men between the house occupied by the defendant and the saloon; that four men were in the saloon and the defendant was outside, and the defendant had the key of the saloon; that the building occupied by the defendant contained two other occupied tenements; and that in the cellar of the building were four compartments, in one of which the officers found nine empty one-gallon jugs and five empty two-gallon jugs.

The term "intoxicating liquors" must be presumed to have been used in its ordinary sense, and to have referred to liquors the sale of which without a license is unlawful.

*Exceptions overruled.*