COMMONWEALTH *vs.* N. LOUISE HAMEL.

Hampden.     September 24, 1928. — October 8, 1928.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Abortion. Practice, Criminal,* Appeal with assignment of errors; Conduct of trial: remarks by trial judge; New trial. *Evidence,* Admissions, Competency.

If a judge, presiding at the trial of an indictment for a felony other than murder or manslaughter, after a stenographer has been sworn, states: "This indictment is tried subject to G. L. c. 278, and all acts in amendment thereto," the order required by G. L. c. 278, § 31, as amended by St. 1926, c. 329, § 6, to bring the trial within the provisions of §§ 33A–33G, added to G. L. c. 278 by St. 1925, c. 279, § 1, is made, and the defendant has a right to adopt the procedure there provided.

An assignment, by a defendant found guilty of a felony, of error founded upon a remark by the trial judge made at the trial while counsel were at

the bench discussing certain aspects of the evidence and not shown to have been made in the presence of the jury, is without merit, especially where it appears that no exception to the remark was saved.

Although, if a defendant while under arrest is accused of a crime in his hearing and presence and remains silent or unequivocally denies the charge, his silence or denial is not admissible against him at the trial of an indictment charging the crime for which he had been placed under arrest, if his replies are equivocal, the statements eliciting them and his answers or comments are admissible.

At the trial of an indictment charging the defendant with using an instrument upon the body of a woman with intent to procure a miscarriage, which resulted in the woman's death, the judge, subject to exception by the defendant, admitted evidence that, while the woman was at a hospital, police officers called at the defendant's house; that the defendant denied that he knew the woman; that he was then taken to the woman's presence at the hospital, where he admitted that he knew her as a girl who once had worked in a certain shop; and that at the conclusion of a statement by the victim to the effect that the defendant was responsible for her condition, the defendant said that the "girl was out of her head, she did not know what she was talking about." *Held,* that

(1) The defendant's statements were equivocal, and, whether he was under arrest or not, they and the statements eliciting them were admissible;

(2) The evidence was not rendered inadmissible by the fact that, while the defendant was at the hospital and before being brought into the presence of the woman, one of the officers said, "We won't make any noise, . . . You must not do any talking. You must not make any noise."

An exception to a denial of a motion for a new trial of an indictment will not be sustained where the record before this court does not show an abuse of discretion by the trial judge in denying the motion.

INDICTMENT, found and returned on May 11, 1928, and described in the opinion.

In the Superior Court, the indictment was tried before *Burns,* J. The record shows that, at the opening of the trial, after a stenographer had been sworn, the judge said: "This indictment is tried subject to G. L. c. 278, and all acts in amendment thereto." Material evidence and exceptions saved by the defendant are stated in the opinion.

The defendant was found guilty on May 31, 1928. She moved for a new trial on the grounds that the verdict was contrary to the evidence and was contrary to the law. The motion was denied. The defendant then filed an assignment of errors in accordance with §§ 33A–33E, added to G. L.

c. 278 by St. 1925, c. 279, § 1, and amended by St. 1926, c. 329, §§ 1–4. One assignment was that the motion for a new trial should have been granted because there "was no evidence that the crime alleged was committed within the jurisdiction of the court." Other assignments are described in the opinion.

In this court, the Commonwealth, among other contentions, argued that the judge's statement at the opening of the trial was not an "order" such as is required by G. L. c. 278, § 31, as amended by St. 1926, c. 329, § 6, to make the statutory provisions above stated applicable to trials for felonies other than murder and manslaughter.

The case was submitted on briefs.

*R. J. Talbot & J. H. Schoonmaker,* for the defendant.

*C. R. Clason,* District Attorney, for the Commonwealth.

CARROLL, J. The defendant was found guilty upon an indictment charging that she did unlawfully use a certain instrument upon the body of Elizabeth Robbins with the intent to procure a miscarriage, which resulted in the death of said Robbins. One Frosti was tried with the defendant as an accessory before the fact, and was found guilty.

The jury could have found on the evidence that the defendant occupied a house in Springfield and had at least two rooms therein for the care of the sick; that she had cared for women recuperating from miscarriages; that Frosti, who had been intimate with the Robbins girl, saw the defendant at her home, told her the girl was pregnant, and asked if she would care for her; that the defendant requested that the girl be sent to her; that on the day following, Frosti and the Robbins girl went to the defendant's house, and after an interview between the defendant and the girl she left the house with Frosti; that later the girl went to the defendant's house and remained there about three days. According to the statement of Miss Robbins just before her death, the defendant inserted into her a rubber instrument "six or seven times." There was medical testimony that Miss Robbins died of peritonitis caused by an abortion produced by some instrument. We need not review the evidence in detail. The jury were warranted in finding that the de-

fendant performed an illegal abortion on Miss Robbins while she was at the defendant's house, and that the abortion resulted from the use of an instrument by the defendant on the body of Miss Robbins.

The case is properly before us on the defendant's appeal. A stenographer was sworn and the court announced that the indictment was to be tried subject to G. L. c. 278 and all acts in amendment thereto.   Under St. 1926, c. 329, §§ 1, 6, the practice as to trials for murder or manslaughter was extended to proceedings or trials upon indictment or complaint for a felony, by order of the presiding judge.   It was decided in *Commonwealth* v. *McDonald, ante,* 324, that trials for felonies other than murder or manslaughter were to be in accordance with the new practice only upon the order of the presiding judge that the trial was to follow this practice.  The presiding judge made this order and he specially directed that the trial was to be conducted according to G. L. c. 278 and all acts in amendment thereto.   The defendant therefore was not required to proceed according to the former practice and file a bill of exceptions.

Early in the morning of the day Miss Robbins died the defendant was taken to the hospital where Miss Robbins lay dying; in the defendant's presence Miss Robbins accused her of having performed the abortion.   One of the assignments of error is to the admission of this testimony of the deceased. It appeared that when the condition of Miss Robbins became known to the authorities certain police officers went to the house of the defendant about two o'clock in the morning. One of the police officers testified that at this time he "told her . . . [he] was going to take her to the Springfield Hospital to see a girl there that had an abortion performed upon her and stated that Mrs. Hamel had committed the abortion. She said she did not know the girl"; that he said the girl's name was Robbins, and she replied she did not know her; that while the defendant was at the bedside of Miss Robbins she said she knew Mrs. Hamel, that she lived at 503 State Street, that Mrs. Hamel "put some instrument that looked as if it might be rubber into her. . . . she did it on a number of occasions and she also said she packed her with cotton

. . . she went on the bed pan and that Mrs. Hamel told her that she had lost it"; that she also said that Frosti paid Mrs. Hamel $200.   There was testimony that when the defendant saw Miss Robbins at the hospital the defendant said, "Yes, I know that girl.   She is a girl that worked at one time in the Woman's Shop"; that after Miss Robbins had accused the defendant of performing the abortion Mrs. Hamel said "The girl is out of her mind, she don't know what she is talking about."

The defendant testified that when the officers called at her home one of them said to her "she [Miss Robbins] is at the hospital and we want you to come with us"; that she replied she did not want to go and the officer said that ". . . [she] must dress up and come."   She further testified that while at the hospital and before being brought into the presence of Miss Robbins, one of the officers said "We won't make any noise," that "He turned to . . . [her] and said, 'You must not do any talking.   You must not make any noise.'"

In the first assignment of error the defendant contends there was error in the remark by the presiding judge, "This woman [the defendant] was not under arrest, she was not there by compulsion."   It did not appear that this statement was made in the presence of the jury; it was made while counsel were present at the bench discussing certain aspects of the evidence, and, further, no exception appears to have been taken to the statement.   This contention is without merit.

Under the first assignment of error, the defendant has argued that the testimony of Police Lieutenant McNeil "was insufficient for the court to make a ruling that the evidence of the statement of Miss Robbins was admissible"; and that the evidence of conversations in the hospital in the room where Miss Robbins was under treatment was improperly admitted.   Assuming, but without deciding, that Mrs. Hamel was under arrest when she was brought into the presence of Miss Robbins, and assuming also that she excepted to all of the testimony from several witnesses, the statements of Miss Robbins were admissible as admissions against the defendant if her replies to the declarations of Miss Robbins were equivocal.   It is not contended that

declarations of Miss Robbins were dying declarations.    The Commonwealth contends that her statements in the presence of the defendant charging her with the commission of the crime became admissible against the defendant in view of the defendant's replies.    If a defendant while under arrest is accused of a crime in his hearing and presence and he remains silent or unequivocally denies the charge, his silence or denial is not admissible against him.    But if his replies are equivocal, the statements eliciting them and the answers or comments are admissible.    *Commonwealth* v. *Spiropoulos,* 208 Mass. 71, 74.    *Commonwealth* v. *Gangi,* 243 Mass. 341, 345.    *Commonwealth* v. *Festo,* 251 Mass. 275, 280.    In *Commonwealth* v. *Madeiros,* 255 Mass. 304, one Bedard who was jointly indicted with the defendant for the crime, in the presence of the defendant while under arrest, made a statement implicating himself and Madeiros in the commission of the crime.    At the conclusion of the statement, Madeiros called Bedard an insulting name and said "I would like to kill you."    It was held that the evidence was admissible. It was said at page 313, "When a defendant while under arrest is charged with a crime by an accusation made in his presence, and makes an equivocal reply or one susceptible of being interpreted as an admission or one not likely to be made by an innocent man, the question or statement and the answer or comment are admissible."

When the police officers called at the Hamel house, the defendant denied that she knew Miss Robbins; when taken into her presence she admitted that she knew Miss Robbins as a girl who at one time worked in the Woman's Shop; and at the conclusion of the victim's statement the defendant said that the "girl was out of her head, she did not know what she was talking about."    These statements of the defendant were equivocal.    Her remarks that she knew the girl as an employee of the Woman's Shop and that the girl did not know what she was talking about were of such a nature that the entire conversation was admissible against the defendant. *Commonwealth* v. *Spiropoulos, supra.    Commonwealth* v. *Festo, supra.    Commonwealth* v. *Madeiros, supra.*    It appeared that something was said, when the defendant came to the hospital,

about remaining quiet. This evidence in its aspect most favorable to the defendant does not render the statements of Miss Robbins and the replies of the defendant incompetent. There was evidence for the jury that Miss Robbins charged the defendant with the crime and that in response the defendant made the equivocal statements referred to.

The second assignment of error is to the refusal of the judge to strike out the testimony showing the statements of Miss Robbins in the presence of the defendant and her replies to the charge. This testimony was properly before the jury for the reasons already stated; the motion to strike it out was rightly denied. The nurses and police officers heard what the Robbins girl said; Mrs. Hamel was present; it was for the jury to say whether the statements of Miss Robbins were made in the presence and hearing of the defendant. See *Commonwealth* v. *Klosowski*, 252 Mass. 149, 151.

There was no error in denying the defendant's motion for a new trial. The granting of a new trial is a matter of judicial discretion, and there is nothing here to show any abuse of this discretion. *Commonwealth* v. *Cero, ante*, 264, 272, 275.

There was evidence for the jury that the offence was committed within the jurisdiction of the court. They could find that the illegal abortion was performed by the defendant at her house in Springfield; that she inserted into the body of the victim a rubber instrument and by this means accomplished an unlawful abortion.

*Judgment affirmed.*