## Ferretti v. McCollum

*John E. Costello*, for plaintiffs.
*Woodward & Bassi*, for defendants.

CURRAN, J., June 28, 1966. — Plaintiffs, Anthony Ferretti and Winton R. Wagner, partners engaged in the business of building homes and other structures, brought this action in mandamus, asking that William B. McCollum, Carroll Township Building Inspector, be ordered to issue a permit to them for the construction of a five or six family apartment house; and that the township supervisors, Glen Carson, Ernest Gross, and William Fawcett, be ordered to refrain from interfering with the issuance of this permit.

The facts have been agreed upon by written stipulation filed with the court. According to these facts, plaintiffs' application for the permit met all of the requirements of the township building permit ordinance.

The Township of Carroll has at present no zoning ordinance, although it is presently proceeding with steps necessary to enact such an ordinance. A proposed

ordinance has been advertised and at least one public meeting held, as required by law as a condition precedent to enacting a lawful zoning ordinance. However, both of these things, i.e., the advertising of the zoning ordinance and the hearing thereon, came after plaintiffs first filed their building plans and specifications and requested a building permit. The true operative requirements of the Carroll Township building permit ordinance, providing for the issuance of such a permit, are the second and third paragraphs of section two of the ordinance, enacted January 31, 1956, which reads as follows:

"Prior to the issuance of a permit required under the provisions of this Ordinance, the owner or owners of said premises or building shall furnish to the Secretary of the Board of Supervisors of Carroll Township a copy of the plans and specification, together with the name of the architect and contractor, a statement of the estimated cost of the construction, repair or alteration of said building, and such additional information concerning the names of the owner or owners of said building and their mailing addresses as may be necessary to enable the Secretary to pass upon such application.

"The fee for filing such an application and securing the permit herein specified shall be the sum of Three ($3.00) Dollars, payable to said Carroll Township at the time such application is filed and the Township Secretary shall make monthly reports of such payments and shall deliver to the Township Treasurer the amount so received".

It is at once apparent that this ordinance sets out only minimal requirements incumbent upon a builder desiring a permit.

Turning now to the seventh and last paragraph of the stipulation of facts, we see that it is conclusively clear that the supervisors are here reading something

into their building permit ordinance that can neither be read nor found in the enactment:

"7. The Supervisors of the Township of Carroll have refused to issue the permit by reason of the fact that in their opinion, *the plans and specifications submitted by the plaintiffs are not sufficiently well-prepared nor adequately planned to properly dispose of all sewage; and that in their opinion, the minimal Commonwealth health regulations cannot be met within the area owned by the plaintiffs and upon which dispersion of sewage be attempted to be effectuated*". (Italics supplied.)

The township could have passed, under its existing powers, a permit ordinance broader, more inclusive and more restrictive, but this it did not do. We can only deal with its present enactment.

A municipality has no inherent power to interfere arbitrarily with the right of an owner of real estate in the use and improvement of his property by the construction of buildings and other structures. But certain building regulations are not only lawful, but desirable, and when reasonable and proper, they fall within the scope of the State's inherent police power, which may be delegated by the State to a municipality: Act of May 1, 1933, P. L. 103, art. VII, sec. 702, as amended, 53 PS §65750; Lower Merion Township v. Gallup, 158 Pa. Superior Ct. 572 (1946). Before such police powers can be lawfully exercised, the municipality must properly enact a prohibitory ordinance, which means, at the very least, that the ordinance must specifically set out clearly all of its prohibitory or regulatory provisions. Without reviewing all the things that a municipality may require by way of building regulations, we point out that in a very real sense, all exercise of the police power is a derogation from the common law, and thus, the enactment providing for its use in any particular way must be specifically informative, as any regulation invoking this power must be strictly

interpreted: Greene County v. Southern Surety Co., 292 Pa. 304 (1928) ; Commonwealth v. Hartung, 156 Pa. Superior Ct. 176 (1944). Such specificity is completely lacking in the Carroll Township ordinance, particularly in respect to what it purports to lay against plaintiffs, i.e., *measures of sanitation, area of building, traffic congestion* and the *displeasure of the township residents*, as set out in defendants' answer and in the stipulation of facts.

This ordinance of Carroll Township, while not invalid per se, is powerless to force upon plaintiffs that which would require them to do something not clearly set out in the ordinance, which is what they attempted here. So in this case, where the right to a building permit is clear, the issuance thereof being no more than the performance of ministerial act, which admits of no discretion here, on the part of the municipal officer, mandamus is not only appropriate, but the proper remedy to compel performance: Lhormer v. Bowen, 410 Pa. 508 (1963) ; 23 P. L. Encyc. 413, §42.

ORDER

And now, June 28, 1966, it is ordered that a writ of mandamus issue compelling William B. McCollum to issue a building permit to plaintiffs, Anthony Ferretti and Winton R. Wagner, as applied for by them.